## WRIGHT v. BALDWIN.

The master of a vessel contracted with R for the transportation of a full cargo of wheat. R loaded the vessel, partly with his own wheat and partly with that of other owners, who were to pay him two cents per bushel more for the freight than the price stipulated between himself and the master. The wheat was indistinguishable in kind and quality, and the parcels belonging to the different shippers were intermixed and in no way separated in the vessel. The master signed separate bills of lading to each shipper, except the plaintiff, who had on board one thousand bushels of wheat, of which the master had no knowledge till he reached his port of destination: *Held*, that by consenting to sign separate bills of lading, the master created a privity of contract between himself and the shippers, and rendered his owners responsible to them for the delivery of the wheat.

The master delivered so much wheat as satisfied his bills of lading, and the defendant, part owner with him of the vessel, sold the remainder, which was less than one thousand bushels, after a demand by the plaintiff of the full quantity: *Held*, that the plaintiff was entitled to recover for the conversion of one thousand bushels.

APPEAL from the Supreme Court. Action for the conversion of one thousand bushels of wheat. The trial was before a referee, who found that the defendant was, in 1854, part owner of the schooner Raleigh, navigating the great lakes, one Tyler being master, and also part owner. In November, 1854, Tyler, being at Toledo, made a contract with Reed & Co., of that port, by which they were to load the vessel with a full cargo of wheat for Oswego, at 10½ cents a bushel. Under this arrangement, Reed & Co. put on board the vessel, at their own warehouse, wheat to the amount, as it was supposed, of three thousand and forty bushels. Reed & Co. then sent the vessel to three other warehouses, at which the cargo was filled up to something more than ten thousand bushels. At one of these warehouses, that of King & Co., there was put on board, according to the shipping bills received from them and signed to them by the master, two thousand and sixty bushels, but in fact three thousand and sixty bushels; the additional one thousand bushels belonging to the plaintiff. The master

gave separate bills of lading in the usual form to the different shippers of the wheat, except that he neither gave nor received any bill of lading for the one thousand bushels taken in at King & Co.'s warehouse, which was the subject of this suit. The master was not informed, until called upon to sign bills of lading, but that all the wheat was shipped by Reed & Co., nor was he informed until he reached Oswego that the plaintiff had any wheat on board. The plaintiff, and other parties shipping, paid Reed & Co. 12½ cents a bushel for transporting the wheat. After the vessel arrived at Oswego, and before he had broken bulk, the master was informed that the plaintiff had one thousand bushels of wheat on board, and was shown a bill of lading thereof, signed and transmitted to the plaintiff by the agent, who had purchased it on his behalf of King & Co. He refused to deliver the wheat as requested by the plaintiff, but after delivering all that the other bills of lading called for, stored the remainder, which was eight hundred and ninety-two bushels, in a warehouse, in the name of the defendant. The wheat on board of the vessel was all of the same kind and quality, and was intermixed; the parcels belonging to the different shippers being in no way separated or distinguished. The plaintiff demanded of the defendant his one thousand bushels of wheat, and tendered enough to pay the freight and charges thereon. The defendant offered to deliver the eight hundred and ninety two bushels, if the plaintiff would take that amount, and discharge him. The plaintiff declined to do so, and the defendant sold the wheat. The defendant moved for a non-suit, which was refused and he took an exception. The referee directed judgment for the plaintiff. The judgment having been affirmed at general term in the fifth district, the defendant appealed to this court.

*Lyman Tremain,* for the appellant.

*Albertus Perry,* for the respondent.

SELDEN, J.   It is claimed on the part of the defendant that the wheat in controversy in this case, was transported solely under the contract between Tyler, master of the schooner Raleigh, and Reed & Co., of Toledo, by which the latter agreed to load the schooner with a cargo of wheat for Oswego, at 10½ cents per bushel; and that if other persons furnished the wheat under an arrangement with Reed & Co., by which the latter were to receive 12½ cents per bushel for the transportation, the latter alone, and not the owners of the vessel, are directly responsible to the shippers.

This position would be unanswerable if the master had persisted throughout in dealing with Reed & Co. alone. But when, after receiving the wheat, he consented to give shipping bills to the respective owners, he thereby created a privity of contract between himself and such owners, and became responsible directly to them for the safe transportation and delivery of the wheat.   The effect of the entire arrangement was, that Reed & Co. were to receive two cents per bushel brokerage, for making the contract in behalf of the owners of the wheat.

The defendant's counsel also contend that inasmuch as the one thousand bushels of wheat, for which this action is brought, were never separated from the residue of the wheat with which the vessel was loaded, nor in any way distinguished from the general mass, the action cannot be sustained — for the want of any identification of the property purchased by the plaintiff.   The authorities upon which the counsel relies to support this position are those which hold, that in order to pass the title to part of a general mass of property, it is necessary that the portion intended to be sold should be separated from the residue, or in some way designated so as to be capable of being identified.   This is no doubt true where the aggregate, out of which the part sold is taken, consists of separate articles capable of being readily distinguished from each other.   But when the whole mass consists of portions which are homogeneous and undis

Wright *v.* Baldwin.

tinguishable, as for instance, wine in a cask, or wheat in a bin, authorities are not wanting to show that the title will pass without a separation, and that the purchaser becomes a tenant in common with the owners of the residue.

But whatever may be the true rule on this subject, it cannot affect the present case. By the delivery of all the other parcels of wheat to their respective owners, a perfect separation and identification had been effected. The tenancy in common which existed among the other owners having been severed, the wheat to which the purchase by the plaintiff must necessarily attach was designated, and the portion which remained became his. The master of the vessel was bound, therefore, to deliver it to him upon demand. This obligation, indeed, the master did not dispute; but the real controversy between him and the plaintiff was, whether he was liable for the deficiency. The referee has found specifically, that the plaintiff's wheat was accurately weighed and tallied, and that there was no proof of the accuracy of the weight or tally of the other parcels. This finding might not be of any importance if the defendant had shown how the deficiency could otherwise have occurred. But in the absence of any evidence of waste or loss, the presumption is that there must have been some mistake in regard to the quantity contained in some of the parcels, and the plaintiff has succeeded in showing that this mistake did not occur in the parcel of which his wheat was a part. The master was bound at all events, to see that the plaintiff had his full quantity; and when by delivery to others the quantity remaining in the vessel was reduced to one thousand bushels, the right of the plaintiff attached itself to that specific portion of the wheat, and the master should have delivered it to him.

The judgment should be affirmed.

All the judges concurring,

Judgment affirmed.